Kirk D. Hanson (CA SBN 167920)
Jeffrey C. Jackson (CA SBN 140990)
JACKSON HANSON, LLP
2790 Truxtun Road, Suite 140
San Diego, CA 92106
Tel: (619) 523-9001
Fax: (619) 523-9002

Attorneys for Plaintiffs Felicia Vidrio,
Paul Bradley, the Aggrieved Employees,
and the Class Members

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELICIA VIDRIO and PAUL BRADLEY, individually, and on behalf of all others similarly situated,<br><br>Plaintiff(s),<br><br>vs.<br><br>UNITED AIRLINES INC., and DOES 1 through 50, inclusive,<br><br>Defendant(s). | Case No.: cv15 -7985-PSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br><br>Date: January 20, 2023<br>Time: 1:30 p.m.<br>Location: Courtroom 6A<br>350 W. 1st Street<br>Los Angeles, CA 90012<br>Judge: Hon. Phillip S. Gutierrez |

## <u>NOTICE OF MOTION AND MOTION</u>

TO DEFENDANT AND ITS ATTORNEYS OF RECORD:

YOU ARE HEREBY NOTIFIED THAT on January 20, 2023, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 6A of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, CA 90012, Plaintiffs, on behalf of the Class Members, the State of California, and the Aggrieved Employees, will and hereby do move the Court for preliminary approval of the proposed class action settlement and request that the Court:

1.      Preliminarily approve the proposed Class Action and PAGA Action Settlement (the "Settlement"), attached as **Exhibit 1** to the Declaration of Kirk D. Hanson in Support of Motion for Preliminary Approval of Class Action Settlement, filed concurrently herewith;

2.      Approve the parties' proposed Notice of Settlement in the form attached to the Settlement as Exhibit "A";

3.      Authorize distribution of the parties' proposed Notice of Settlement to the Class Members in the manner described in the Settlement;

4.      Set deadlines for Class Members to submit objections to the Settlement or opt-out of the Settlement in the manner described in the Settlement; and

5.      Set a briefing schedule and hearing date for Plaintiffs' motion for award of attorney's fees, costs, and service awards, and set a briefing schedule and hearing date for the final fairness hearing for final approval of the Settlement.

///
///
///

This Motion is made on the grounds that the Settlement is fair, reasonable, and adequate and within the range of possible final approval. This Motion is based upon this Notice of Motion, the Memorandum of Points & Authorities in Support of the Motion, the Declaration of Kirk D. Hanson filed concurrently herewith and the exhibits attached thereto, the [Proposed] Order filed concurrently herewith, the oral argument of counsel, if any, and on such additional matters and records as the Court may consider at the time of the hearing.

Dated: December 19, 2022                    **JACKSON HANSON LLP**

                                            /s/ *Kirk D. Hanson*
                                            Kirk D. Hanson, Esq.
                                            Attorneys for Plaintiffs, the Aggrieved
                                            Employees, and the Class Members

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................………………………...........1

II.     CASE HISTORY…………………..………………………………...…..............2

    A.   The Initial Litigation in the District Court.............................................2

    B.   The Appeals...............................................................................................2

    C.   The Litigation in the District Court After Remand.................................3

III.    THIS SETTLEMENT MERITS PRELIMINARY APPROVAL...............................4

    A.   The Legal Standards for Preliminary Approval.....................................4

    B.   Overview of the Settlement Agreement....................................................5

        1.   Settlement Amounts...............................................................5

        2.   The Release..............................................................................6

        3.   Remedial Measures by United..............................................7

        4.   Class Notice of Settlement....................................................7

        5.   Objections/Opt-Outs; No Claims-Made Process..................7

    C.   Analysis of the Settlement Agreement.....................................................8

        1.   The Settlement Is the Result of Fair & Honest Negotiations..........................8

        2.   The Amount Payable to the Class Members/Aggrieved Employees...............9

        3.   The PAGA Payment...............................................................11

        4.   The Class Release is Narrow................................................13

        5.   Settlement Administration Costs..........................................14

        6.   Attorney's Fees......................................................................14

        7.   Litigation Costs.....................................................................19

        8.   Service Awards.......................................................................20

        9.   Cy Pres...................................................................................23

10. *Class Notice*.................................................................................**23**

11. *United's Remedial Measures*.........................................................**23**

IV.   **CONCLUSION**.......................................................................................**24**

**TABLE OF AUTHORITIES**

**PAGE**

**CASES**

*Bank of America v. Cory*, 164 Cal.App.3d 66 (1985)...................................................10

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)…...…………………….......................……10

*Ceja-Corona v. CVS Pharmacy, Inc.*, 2015 WL 222500 (E.D. Cal. 2015)......................12

*Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 (N.D. Cal. 2011)...................12

*Edwards v. Chartwell Staffing Services, Inc.*, 2018 WL 6174718 (C.D. Cal. 2018)......................4, 5

*Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801 (E.D. Cal. 2012)........................12

*Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (E.D. Cal. 2012)..............................7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................................5

*Harris v. Marhoefer*, 24 F.3d 16 (9th Cir. 1994)..........................................................10

*Hopson v. Hanesbrands Inc.*, 2008 WL 3385452 (N.D. Cal. 2008)................................12

*In re Activision Sec. Lit.*, 723 F.Supp.1373 (N.D. Cal. 1989)........................................18

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. 2005).....................................15

*In re M.L. Stern Overtime Litigation*, 2009 WL 995864 (S.D. Cal. 2009)...............12, 13

*JD Tamimi v. SGS North America Inc.*, 2021 WL 3417645 (C.D. Cal. 2021).................12

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. 2009)......................15, 18

*Magadia v. Wal-Mart Associates, Inc.*, 384 F.Supp.3d 1058 (N.D. Cal. 2019)..............12

*Miguel-Sanchez v. Mesa Packing, LLC*, 2021 WL 1736807 (N.D. Cal. 2021)................12

*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. 2014)........................................12

*Nordstrom Commission Cases*, 186 Cal.App.4th 576 (2010).........................................12

*Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989).....................10

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................8, 20

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 349284 (E.D. Cal. 2007)................18

*Singer v. Becton Dickinson and Co.*, 2010 WL 2196104 (S.D. Cal. 2010)....................18

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990)........10

*Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003)......................................................10

*Turner v. Motel 6 Operating L.P.*, 2018 WL 6977474 (C.D. Cal. 2018)....................................20, 22

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).........................................14, 15

*Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020)...................................................1, 3, 16

*Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021).....................................1, 3, 16

*Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997)...............................10

**STATUTES**

Labor Code §226……………………………………….....................…………………1, 13, 15, 21

Labor Code §226(a)(2)……………………………………….....................……………………..7, 23

Labor Code §226(a)(8)……………………………………….....................…..…………..…...4, 17

Labor Code §226(a)(9)……………………………………….....................……………….3, 7, 21, 23

Labor Code §226(e)(1)……………………………………….....................…………………………9

Rule 23(e)……………………………………….....................………………………4

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    INTRODUCTION

This case has been a long battle both in the district court and in the courts of appeal, and has been litigated for almost 8 years. The appellate decisions from this case clarify how California's labor laws apply to interstate workers home-based in California. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 760-761 (2020); *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021). In addition to this legal precedent, this case has now produced an excellent settlement that the Parties believe is worthy of both preliminary and final approval by this Court.

This is a wage statement *formatting* case under Labor Code section 226 wherein Plaintiffs alleged, and this Court agreed, that United's wage statements fail to show the applicable hourly rates and the number of hours worked at each rate. The case has now settled for a *non-reversionary* total cash amount of **$53,500,000**. There is no wage claim in this case and no wage claims of any type are being released under the Settlement. There are approximately 10,865 flight attendant Class Members in this case. The Settlement amounts to an average *gross* cash value for each Class Member of **$4,903**, and an average *net* individual settlement payment to each Class Member of **$3,241** after deduction for litigation costs, attorney's fees, service awards, and settlement administration costs. Additionally, as a result of Plaintiffs' success in this lawsuit, United is making changes to the format of its wage statement so that it shows all hours worked and the applicable hourly rates. This change to the wage statement was one of the main objectives of this lawsuit as laid out in Plaintiffs' Complaint.

For the reasons outlined above, and for the many additional reasons discussed below, Plaintiffs and Class Counsel believe that this Settlement is more than fair, adequate, and reasonable, and therefore, should be preliminarily approved by this Court.

## II.   CASE HISTORY

### A.   The Initial Litigation in the District Court

On August 6, 2015, Plaintiff Felicia Vidrio filed her action in the Superior Court of the State of California, County of Los Angeles (Case No. BC 590492). On August 6, 2015, Plaintiff Paul Bradley filed his action in the Superior Court of the State of California, County of Los Angeles (Case No. BC 590491). United answered the complaints and on October 9, 2015, removed the actions to the Federal District Court, Central District of California. Thereafter, pursuant to stipulation of the parties and order of this Court, the *Vidrio* and *Bradley* actions were consolidated and merged together for all purposes, and an Amended Consolidated Complaint was filed on March 22, 2016, with the case number of the *Vidrio* action. (Document 24).

On August 23, 2016, the Court certified the case as a class action. Thereafter, the Parties filed cross-motions for summary judgment, and the Court granted summary judgment in favor of United based upon extraterritoriality and Dormant Commerce Clause defenses raised by United. Plaintiffs timely appealed the ruling to the Ninth Circuit.

### B.   The Appeals

The Parties filed briefs with the Ninth Circuit and attended oral argument. On May 14, 2018, the Ninth Circuit certified two questions to the California Supreme Court for resolution: (1) Does the exemption from Labor Code section 226 in Wage Order No. 9 for union employees bar Plaintiffs' claims?; and (2) Does application of Labor Code section 226 to United's flight attendants and pilots violate the presumption against the extraterritorial application of state law? The California Supreme Court accepted review, and the Parties filed briefs with the California Supreme Court and attended oral argument. On June 29, 2020, the California Supreme Court issued its decision answering "no" to both questions, thereby closing the door on United's Wage Order No.

9 exemption defense and extraterritoriality defense. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732, 760-761 (2020).

The case then went back to the Ninth Circuit for resolution of the three (3) remaining appellate issues, to wit, the Dormant Commerce Clause preemption defense, the Airline Deregulation Act preemption defense, and the collective bargaining agreement/RLA preemption defense. The Parties filed supplemental briefing with the Ninth Circuit on these issues and attended a second oral argument. On February 22, 2021, the Ninth Circuit issued its decision and *reversed* summary judgment in favor of United, thereby closing the door on the Dormant Commerce Clause defense, the Airline Deregulation Act defense, and the collective bargaining agreement/RLA defense. *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021). On March 26, 2021, the Ninth Circuit issued its mandate giving effect to its February 22, 2021 decision, and this case was remanded back to this Court.

### C.   The Litigation in the District Court After Remand

Pursuant to the order in the Ninth Circuit's decision (*see Ward*, 986 F.3d at p. 1245), the class definition was amended on remand to incorporate the "*Ward* test" established by the California Supreme Court, that is, Labor Code section 226 applies to interstate workers like the flight attendants in this case if they (1) work primarily in California or (2) do not primarily work in any single state, but have their base of work operations in California. *Ward, supra,* 9 Cal.5th at 760-761. A revised class notice was mailed to all new class members who fall under the amended class definition. After subtracting the opt-outs, the flight attendant Class totals approximately **10,685** class members.

The Parties then filed a second round of cross-motions for summary judgment, and on May 6, 2022, this Court issued the following ruling: (1) the Court granted Plaintiffs' Motion on the issue of liability with respect to Labor Code section 226(a)(9), finding that the flight attendants' paystubs failed to list the applicable hourly rates and

the number of hours worked at each rate; and (2) the Court granted Defendant's Motion on the Labor Code section 226(a)(8) claim, finding that the listing of a post office box on the paystub satisfied the address requirement under that subdivision. With respect to the Labor Code section 226(a)(9) claim, the Court rejected Defendant's "multiple document" paystub theory and rejected Defendant's "good faith" defense. (Document 81).

After the dust settled on the Court's May 6, 2022, summary judgment ruling, the Parties agreed in late June of 2022 to participate in a mediation, and scheduled the mediation with respected wage and hour mediator Michael J. Loeb for September 13, 2022, which was his first available date. The mediation began in the morning and ended late in the evening with a mediator's proposal that was accepted by both sides three days later. However, the negotiations continued for months thereafter on the specific terms of the long version settlement summarized below. (Hanson Decl. ⁋ 12).

## III.    THIS SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    <u>The Legal Standards for Preliminary Approval</u>

The approval of a class action settlement under Rule 23(e) is a two-step process in which the court first determines whether the settlement merits preliminary approval, and if so, then moves to the second step of final approval. *Edwards v. Chartwell Staffing Services, Inc.*, 2018 WL 6174718, at *4 (C.D. Cal. 2018). At the preliminary approval stage, the court considers various factors to determine whether the settlement appears to be fair and reasonable, and the product of serious, informed, and non-collusive negotiations, such that the settlement falls within the range of possible final approval. *Id*.

Because settlements are the result of an adversarial process with competing interests, the result is never perfectly worded. Indeed, as this Court has recognized: "The district court is cognizant that the settlement 'is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but

whether it is fair, adequate and free from collusion.'" *Edwards*, at *5, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). As discussed below, this Settlement meets all the criteria for preliminary approval.

> **B.**     **Overview of the Settlement Agreement**

The proposed Settlement Agreement is attached as **Exhibit 1** to the Hanson Declaration filed concurrently herewith, and the proposed Notice of Settlement is attached as Exhibit "A" to the Settlement. The Settlement terms are summarized below.

> **1.     *Settlement Amounts***

> **(1)** **Attorney's Fees** in an amount of one-third of the **GSV** (**$17,833,333.33**) and **Litigation Costs** in an amount up to **$110,000.00** to Class Counsel. (**Exhibit 1** ¶ 18);

> **(2)** **Class Representative Service Awards** of **$20,000.00** for Felicia Vidrio and Paul Bradley. (**Exhibit 1** ¶ 19);

> **(3)** **Settlement Administration Costs** to Rust Consulting, Inc. in the amount of **$79,917.81**. (**Exhibit 1** ¶ 20). A true and correct copy of Rust Consulting's bid for this case is attached as **Exhibit 2** to Hanson Decl.;

> **(4)** **PAGA Payment** of **$300,000.00** (75% paid to the Labor & Workforce Development Agency in the amount of $225,000.00 and 25% paid to the Class Members/Aggrieved Employees in the amount of $75,000.00). (**Exhibit 1** ¶¶ 6, 21);

> **(5)** **Class Member/Aggrieved Employee Payments** are made from the balance remaining of the **GSV** after items (1) through (4) above are subtracted from the **GSV** (the "**Net Settlement Value**" or "**NSV**"). The

$75,000 PAGA payment to the Aggrieved Employees is not subtracted from the **GSV** and is included in the **NSV**. (**Exhibit 1** ¶¶ 7, 22). The **NSV** from which the individual payments will be made totals **$35,211,748.90.** The individual payment to each Class Member/Aggrieved Employee will be determined by multiplying the "paystub value" by the number of wage statements the individual Class Member/Aggrieved Employee received during the Class Period. The "paystub value" will be determined by dividing the total number of wage statements received by all Class Members during the Class Period into the **NSV**, the result being the "paystub value." (**Exhibit 1** ¶ 22); and

(**6**) A ***Cy Pres Payment*** is provided by the Settlement only in the event there is an amount remaining from uncashed settlement checks after the first check distribution, and the *cy pres* payment is only triggered if a second check distribution to the Class Members who cashed their first settlement check is not economically feasible (e.g., the cost of the second distribution is more than the balance remaining). (**Exhibit 1** ¶ 24). The Parties agree that if a *cy pres* payment is triggered, then the payment should go to Legal Aid at Work. (**Exhibit 1** ¶ 24).

### 2.   *The Release*

The Class Member/Aggrieved Employee Release is limited to the Labor Code section 226 wage statement *formatting claims* alleged and certified in this action and wage statement *formatting claims* based upon the factual allegations in the Complaint. In other words, the Release is limited to paystub formatting claims. (**Exhibit 1** ¶¶ 26, 28-29). Importantly, no claims of any kind relating to unpaid wages are being released by the Class Members/Aggrieved Employees, and unpaid wage claims are specifically

excluded from the Release. (**Exhibit 1** ¶¶ 26, 28-29).

### 3.  *Remedial Measures by United*

Effective June 2022, as a direct result of the success Plaintiffs and the Class achieved in this lawsuit, United began changing the format of its wage statements to bring them into compliance with Labor Code section 226, subdivisions (a)(2) and (a)(9). (**Exhibit 1** ¶¶ 30-31). United has informed Plaintiffs that it believes the changes will be complete by March of 2023. United will file a motion with the Court to be heard at the same time as the final approval hearing that explains the changes it has made to its wage statements to bring them into compliance with Labor Code section 226. (**Exhibit 1** ¶¶ 30-31).

### 4.  *Class Notice of Settlement*

The Class Notice, attached as Exhibit "A" to the Settlement Agreement, summarizes this lawsuit and the terms and conditions of the Settlement. The Class Notice informs the Class Members of the total amount of the Settlement and the amounts allotted thereunder for attorney's fees, litigation costs, service awards, settlement administration costs, PAGA payments, and payments to the Class Members, and informs the Class Members about the release and their right to object or be excluded from the Settlement. The Notice also explains the procedure and deadlines for filing objections and appearing to present objections.

### 5.  *Objections/Opt-Outs; No Claims-Made Process*

The Notice of Settlement will be mailed to all Class Members via first-class regular U.S. Mail after the Settlement Administrator performs various address searches to update the addresses of all Class Members. (**Exhibit 1** ¶ 35). Once the Notice is mailed, the Class Members will have 30 days to object to the Settlement or request to be excluded from the Settlement. (**Exhibit 1** ¶ 36). There is no claims process or "claims made" process in this Settlement, that is, settlement payments will simply be mailed to all Class Members who do not timely exclude themselves from the Settlement. (**Exhibit**

**1** ¶ 40).

### C.   **Analysis of the Settlement Agreement**

The **$53,500,000.00** settlement amount is well within the range of reasonableness and, in fact, is an excellent result. The Class Period and PAGA Period is August of 2014 through March of 2023. The Class Members are approximately **10,865** flight attendants who are/were employed by United during the Class Period/PAGA Period and who were also home-based for work purposes at California airports during that time. Prior to United's remedial paystub measures, the Class Members/Aggrieved Employees received approximately 917,980 wage statements reflecting flight advances and regular pay that failed to list the applicable hourly rates and the number of hours worked at each rate, as disclosed by United's discovery responses to Plaintiffs' Special Interrogatories. (Hanson Decl. ¶ 21). For the reasons discussed below, this **$53,500,000.00** common fund settlement is an excellent result.

### 1.   *The Settlement Is the Result of Fair & Honest Negotiations*

A settlement agreement reached through genuine arms-length negotiations with a mediator supports a conclusion that the settlement is fair. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the Parties attended an in-person lengthy mediation in San Francisco on September 13, 2022, with respected wage and hour mediator Michael Loeb. All negotiations were hard-fought, and at arms-length. (Hanson Decl. ¶ 22). However, the case did not settle on September 13, 2022, but settled in principle a few days later when both sides accepted the mediator's proposal with respect to the amount to be paid by United. However, the mediator's proposal did not contain any other settlement terms. Accordingly, the settlement negotiations continued between the Parties for several more months on the specific terms of the deal (e.g., the releases, the Notice, the calculation of the individual settlement payments, the effective date, etc.) and these further negotiations also sometimes involved the mediator. (Hanson Decl. ¶ 22).

To be clear, there was no collusion between the Parties at any time, and the very large gross settlement number resulting from the intense settlement negotiations (**$53,500,000**) speaks for itself. Moreover, this was not a settlement negotiated early on, prior to class certification or discovery. To the contrary, this Settlement was negotiated after almost 8 years of hard-fought litigation that included contested class certification, two rounds of cross-motions for summary judgment, and several years of extensive appeals. As a result, both sides fully understood the strengths and weaknesses of every issue in the case by the time they got to the mediation on September 13, 2022. (Hanson Decl. ¶ 22). In sum, this Settlement is the result of informed, fair and honest negotiations.

### 2. *The Amount Payable to the Class Members/Aggrieved Employees*

After subtracting the $225,000.00 PAGA payment to the State of California, the gross amount remaining for the Class Members/Aggrieved Employees is **$53,275,000.00**. This amounts to an average *gross settlement value* for each Class Member/Aggrieved Employee of **$4,903.36** (e.g., $53,275,000.00 ÷ 10,865 Class Members = $4,903.36). This is a great result because the number is *greater than* the $4,000 statutory cap on recovery for individual wage statement claims. See Lab. C. § 226(e)(1). The $4,903.36 amount is 18% more than the $4,000 statutory cap. When the $4,000 cap is applied, which would be the case at trial, the statutory penalties under Labor Code section 226(e)(1) amount to only **$43,460,000.00** (e.g., 10,865 flight attendants x $4,000 cap = $43,460,000). Based upon the length of the Class Period (over 8 years) and the low employee turnover, it is likely that the majority of the Class Members would hit the $4,000 cap at the time of trial. Indeed, a Class Member would only need to receive 41 paystubs (e.g., work 41 pay periods or 20 months) to reach the $4,000 cap (e.g., the first paystub is a $50 penalty, and the remaining 40 paystubs are assessed at a $100 penalty each = $4,050). However, in order to be fair to all Class Members/Aggrieved Employees, the Settlement provides that the individual settlement

payments will be based, proportionally, upon the number of wage statements the Class Member received during the Class Period. (**Exhibit 1** ¶ 22). This will prevent a Class Member who was only employed for a *short time* during the Class Period from receiving the same amount as a Class Member who was employed during the entire Class Period. (Hanson Decl. ℙ 23).

It is important to point out that the estimated **$4,903.36** *gross individual recovery* is the <u>true monetary value</u> of the Settlement for each Class Member because this number includes the payment for all the case costs. (Hanson Decl. ℙ 24). This number will then be reduced proportionately to pay for the case costs so that each Class Member pays his or her share of the litigation costs and attorney's fees. *See Paul, Johnson, Alston, & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) [The common fund doctrine "is designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel."]; *Bank of America v. Cory*, 164 Cal.App.3d 66, 91 (1985); *Bank of America v. Cory*, at p. 91; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) [case costs].

After the deduction for all the case costs, the average *net individual settlement payment* to each Class Member will be approximately **$3,240.84**. (Hanson Decl. ℙ 25). This average net amount is calculated as follows: start with the **$53,500,000.00** Gross Settlement Value, and subtract $225,000 for the PAGA payment to the State, subtract $110,000 for Class Counsels' litigation costs, subtract $17,833,333.33 for Class Counsels' attorney's fees, subtract $79,917.81 for settlement administration fees, subtract the $20,000 service award for Plaintiff Felicia Vidrio, and subtract the $20,000 service award for Plaintiff Paul Bradley, which results in the Net Settlement Value

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

(NSV) of **$35,211,748.90**[1].  Then divide the NSV by 10,865 Class Members to arrive at the average net individual settlement payment of $3,240.84. (Hanson Decl. ₧ 25). Although it is recognized that the Settlement calculates the individual payments to each Class Member based upon the number of wage statements the Class Member received during the Class Period (**Exhibit 1** ¶ 22), the average net individual settlement payment calculated above will likely be very close to the actual calculation under the Settlement because of the length of the Class Period (8 years) and the low turnover rate for flight attendants. (Hanson Decl. ₧ 25).

It is also important to point out that Plaintiffs and their Counsel recovered almost $10,000,000 more than their best-case scenario at trial considering the $4,000 limit per Class Member under Labor Code section 226(e)(1). Thus, the $53,500,000 settlement amount represents approximately 118% of the maximum recovery at trial. This, along with the fact that the $53,500,000 settlement amount will be held in an interest-bearing account, lightens the financial burden on the Class to pay their share of the case costs. (Hanson Decl. ₧ 26).

Finally, no employee-side or employer-side payroll taxes will be withheld from the settlement payments to the Class Members because the payments are for penalties only, and shall not be characterized as wages. However, if for some reason employer-side payroll taxes were to become due with respect to the settlement payments, any such payments will not come from the $53,500,000 GSV. Thus, United will pay these taxes outside of the Settlement. (**Exhibit 1** ¶¶ 23, 25).

### 3.   *The PAGA Payment*

The PAGA payment under this Settlement is $300,000, which is 0.56% of the total $53,500,000 settlement amount. This is well within the typical range of other

---

[1] The $75,000 PAGA payment to the Aggrieved Employees is included in the Net Settlement Value (NSV).

mixed class action/PAGA action settlements in state and federal court, and serves the policy of maximizing the payments to the class members. "[I]n wage and hour class action cases that settle, which are the overwhelming majority of such cases, *very little of the total settlement is paid to PAGA penalties in order to maximize payments to the class members*." *Magadia v. Wal-Mart Associates*, *Inc*., 384 F.Supp.3d 1058, 1101 (N.D. Cal. 2019).

As confirmed by this Court, PAGA allocations in mixed class action/PAGA action settlements like this case typically fall in the range of **0%** to **2%** of the total settlement amount (e.g., 2% is on the high end). *See JD Tamimi v. SGS North America Inc*., 2021 WL 3417645 (C.D. Cal. 2021) PSG. The following examples demonstrate this Court's observation: *Nordstrom Commission Cases*, 186 Cal.App.4th 576, 589 (2010) [**$0.0** (0%) allocated to PAGA claims out of a **$6,405,000** cash settlement that also included an additional **$2,500,000** in merchandise vouchers beyond the cash portion of the settlement]; *Miguel-Sanchez v. Mesa Packing, LLC*, 2021 WL 1736807 at * 10 (N.D. Cal. 2021) [**$0.0** (0%) allocated to PAGA claims out of a **$1,850,000** settlement]; *Hopson v. Hanesbrands Inc*., 2008 WL 3385452 (N.D. Cal. 2008) [**$1,500** (0.3%) allocated to PAGA claims out of a **$400,000** settlement]; *Ceja-Corona v. CVS Pharmacy, Inc*., 2015 WL 222500, at * 2-3 (E.D. Cal. 2015) [**$10,000** (1.1%) allocated to PAGA claims out of a **$900,000** settlement]; *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1330 (N.D. Cal. 2014) [**$10,000** (0.8%) allocated to PAGA claims out of a **$1,250,000** settlement]; *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, at * 14 (E.D. Cal. 2012) [**$10,000** (0.4%) allocated to PAGA claims out of a **$2,500,000** settlement]; *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575, at * 3 (E.D. Cal. 2012) [**$10,000** (0.27%) allocated to PAGA claims out of a **$3,700,000** settlement]; *Chu v. Wells Fargo Investments, LLC*, 2011 WL 672645 at * 1 (N.D. Cal. 2011) [**$10,000** (0.14%) allocated to PAGA claims out of a **$6,900,000** settlement]; *In re M.L. Stern Overtime Litigation*, 2009 WL 995864 (S.D. Cal. 2009) [**$20,000** (2%) allocated to

PAGA claims out of a **$945,960** settlement]. The *In re M.L. Stern Overtime Litigation* case appears to be a bit of an outlier and on the high end of the spectrum.

Additionally, in other mixed class action/PAGA action settlements *personally handled by Class Counsel in this case, and which were approved by the courts*, the PAGA payments were also reduced in order to maximize the payments to the class members, which put these PAGA payments in the standard range of 0% to 2%. These cases include, but are by no means limited to, *Hector Banda v. Verizon California Inc.,* Los Angeles Superior Court Case No. BC434587 [**$95,000** (0.63%) allocated to PAGA out of a **$15,000,000** settlement]; *Willner v. Manpower Inc.,* United States District Court Northern District of California Case No. C11-02846 JSW [**$65,625** (0.75%) allocated to PAGA out of a **$8,750,000** settlement]; *Bengel v. Career Strategies Temporary, Inc.,* Los Angeles Superior Court Case No. BC 565227 [**$0.0** (0%) allocated to PAGA out of a **$750,000** settlement]; and *Robles v. Tustin Motors, Inc.,* Orange County Superior Court Case No. 30-2012-00579414 [**$20,000** (0.49%) allocated to PAGA out of a **$4,035,600** settlement]. (Hanson Decl. ¶ 30).

Thus, in summary, the PAGA payment in this Settlement of **$300,000**, which is 0.56% of the total **$53,500,000** settlement amount, is fair, reasonable, and well within the normal range for state and federal mixed class action/PAGA action settlements.

Finally, on December 9, 2022, Plaintiffs provided the California Labor & Workforce Development Agency ("LWDA") with a copy of the Settlement Agreement for review, and on December 19, 2022, Plaintiffs provided the LWDA with a copy of this Motion for Preliminary Approval. (Hanson Decl. ¶¶ 51, 52).

### 4. *The Class Release is Narrow*

The Class Member/Aggrieved Employee Release is limited to the Labor Code section 226 wage statement *formatting claims* alleged and certified in this action and wage statement *formatting claims* based upon the factual allegations in the Complaint. In other words, the Release is limited to paystub formatting claims. (**Exhibit 1 ¶¶** 26,

28-29). Importantly, no claims of any kind relating to unpaid wages are being released by the Class Members/Aggrieved Employees, and any such claims are specifically excluded from the Release. (**Exhibit 1** ¶¶ 26, 28-29).

### 5. *Settlement Administration Costs*

The Parties have agreed to use Rust Consulting, Inc. as the Settlement Administrator in this case. (**Exhibit 1** ¶ 33). The bid from Rust Consulting for settlement administration in this case is $79,917.81. (See **Exhibit 2** to Hanson Decl.). Class Counsel has used Rust Consulting for settlement administration in other cases, and has been pleased with the results. (Hanson Decl. ¶ 33). Moreover, and equally important, Rust has already performed work on this case with respect to the two rounds of class notices previously mailed to the Class Members. (Hanson Decl. ¶ 33). As such, Rust is already familiar with this case and the Class Members through its prior work. Therefore, it makes sense to continue to use Rust for the administration of this Settlement.

### 6. *Attorney's Fees*

Although a further analysis of Plaintiffs' request for attorney's fees will be set forth in Plaintiffs' Motion for Attorney's Fees, Costs, and Service Awards, the fee request is discussed below under the standards established by the Ninth Circuit: (**1**) the results achieved; (**2**) the risks of litigation; (**3**) the skill required and the quality of the work; (**4**) the contingent nature of the fee and the burden carried by class counsel; and (**5**) awards in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-1050 (9th Cir. 2002)**.**

### (i)     The Results Achieved

In *Vizcaino*, class counsel achieved a $96,885,000 settlement and also achieved non-monetary benefits sought in the lawsuit in the form of changing Microsoft's personnel rules to hire and reclassify workers as fulltime employees instead of temporary workers. *Id.* at pp. 1048-1049. The Ninth Circuit recognized that the litigation also

benefitted employers and workers nationwide by clarifying the law of temporary worker classifications. *Id.* at 1049. Finally, the Ninth Circuit pointed out that class counsel achieved these excellent results in the absence of supporting precedents and against vigorous opposition from Microsoft throughout the litigation. *Id.* The Court relied on these results to uphold class counsels' fee award of $27,127,800, and to reject all objections. *Id.* "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at * 5 (N.D. Cal. 2009), citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. 2005). In *Knight*, class counsel achieved a $500,000 cash settlement, which amounted to 50% of the recoverable damages, and this result warranted a 30% fee award. *Id.*

In this case, Class Counsel achieved fantastic results: a **$53,500,000** cash settlement in a paystub only case (e.g., there is no unpaid wage claim) and also achieved the non-monetary objective of forcing United to change the format of its wage statements to show all applicable hourly rates and the number of hours worked at each rate. The $53,500,000 common fund amount exceeds the amount the Class Members could obtain at trial by about $10,000,000. This is a fabulous result! (Hanson Decl. ¶ 43).

Moreover, these great results were achieved in the absence of any supporting precedents concerning (1) the extraterritorial application of California Labor Code section 226 to California-based interstate transportation workers, (2) the application of the California Wage Order exemption from the wage statement requirements of Labor Code section 226 for union employees, and (3) the application of federal law preemptions to Labor Code section 226's requirements, to wit, Dormant Commerce Clause preemption, Airline Deregulation Act preemption, and Railway Labor Act preemption. In fact, by way of the successful appellate work performed by Class

Counsel *in this case*, legal precedent was created by the California Supreme Court and the Ninth Circuit answering the multitude of legal questions raised by this case. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020); *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021). Thus, this litigation not only benefits the Class Members in this case, but also benefits employers nationwide who do business in California and benefits workers who reside in California or are home-based for work purposes in California. California is one of the world's largest economies. Thus, the legal precedent created by this case benefits numerous people who are not Class Members in this case. All of this success was achieved by Class Counsel against Defendant's vigorous opposition throughout every stage of this litigation, including the recent second round of cross-motions for summary judgment and the intensive settlement negotiations that followed. (Hanson Decl. ¶ 43). These great results are the most important factor supporting Class Counsels' fee request. *Knight*, *supra*, 2009 WL 248367, at *5.

### (ii)    The Risk of Litigation

This case was extremely risky from the start, and in fact, shortly after class certification (a risk itself) Plaintiffs lost this case on various grounds when the Court ruled on the first round of cross-motions for summary judgment. The risk continued on appeal where the Ninth Circuit and California Supreme Court ruled on five (5) separate issues of first impression concerning the application of Labor Code section 226 to unionized interstate transportation workers. *See Ward v. United Airlines, Inc.*, 9 Cal.5th 732 (2020); *Ward v. United Airlines, Inc.*, 986 F.3d 1234 (9th Cir. 2021).

The risks also continued after remand from the Ninth Circuit in the second round of cross-motions for summary judgment on the merits because the merits were not decided on appeal. Although United's various preemption defenses were rejected on appeal, United raised various defenses on the merits in the second round of cross-motions for

summary judgment, and was successful in defeating Plaintiffs' Labor Code section 226(a)(8) claim (the P.O. Box vs. physical address claim). It must be pointed out that if Plaintiffs had lost on any *one* of the five (5) issues raised on appeal, the case would have been over. Likewise, Plaintiffs were at risk of total loss again in the second round of cross-motions for summary judgment. As stated by Class Counsel, this is the most risky and longest running case ever litigated by Class Counsel.  (Hanson Decl. ¶ 44).

### (iii)    The Skill Required & Quality of the Work

This case presented complicated issues of first impression that had to be litigated in both the trial court and on appeal. Therefore, the results achieved (e.g., winning on nearly every issue and obtaining $53,500,000) required a high level of skill and a very high quality of work by Class Counsel. Luck had nothing to do with it. Indeed, the record here (district court and appeal) and the results achieved speak for themselves. This skillful work by Class Counsel and the great results achieved here are based upon Class Counsel's many years of experience successfully litigating wage and hour class actions. (Hanson Decl. ¶¶ 2-5, 45).

### (iv)    The Contingent Nature of the Fee & Class Counsels' Burden

Class Counsel have been working on this case on a contingent-fee basis since March of 2015, and have advanced all of the litigation costs associated with the prosecution of this case, which costs are currently close to $100,000. (Hanson Decl. ¶ 47). Class Counsel do not employ any associates or paralegals, and have worked on this case since March of 2015 without receiving any compensation or cost reimbursement. (Hanson Decl. ¶ 47).

To date, Class Counsels' work on this case includes, but is not limited to, requesting, reviewing, and analyzing Plaintiffs' payroll records, meetings and numerous

phone calls and emails with Plaintiffs, extensive discovery, including document requests, and informal and formal exchanges of information, and extensive motion work, including the research and preparation of Plaintiffs' Motion for Class Certification, two rounds of cross-motions for summary judgment and oppositions thereto, Plaintiffs' Motion to Amend Class Definition after remand from the Ninth Circuit, and this Motion for Preliminary Approval. This case also involved extensive appellate work before the Ninth Circuit and the California Supreme Court. Moreover, there is still much work to be done on this case in preparing the motion for final approval and motion for attorney's fees, and in dealing with the situations that arise in the course of settlement administration that need attention from class counsel. (Hanson Decl. ¶ 47).

This substantial outlay of both attorney time and expenses by Class Counsel, when there was a substantial risk that none of it would be recovered, supports the award of the requested fee here. *Knight*, *supra*, 2009 WL 248367, at *6. Moreover, because of the significant time commitment required by this case over these many years and the small size of Class Counsels' firm (e.g., two attorneys), working on this case necessarily prevented Class Counsel from taking on hourly cases and other contingency cases with less risk and shorter durations for recovery. (Hanson Decl. ¶ 47).

### (v)   Awards in Similar Cases

Most common fund fee awards in the Ninth Circuit average around one-third of the total recovery. *See Knight v. Red Door Salons, Inc*., 2009 WL 248367, at *6 (N.D. Cal. 2009); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 349284, at *4 (E.D. Cal. 2007); *In re Activision Sec. Lit*., 723 F.Supp.1373, 1377-78 (N.D. Cal. 1989); *Singer v. Becton Dickinson and Co*., 2010 WL 2196104, at *8 (S.D. Cal. 2010). As such, the one-third fee requested here is within the normal percentage of class action cases in the Ninth Circuit. Moreover, the one-third fee requested here is also within the range of fee awards in other

class action and PAGA representative action wage and hour cases *that Class Counsel have personally handled*. These cases include, but are not limited to:

*Banda v. Verizon California, Inc.*, Los Angeles County Superior Court Case No. BC 434587 (**35% fee awarded** on $15,000,000 settlement of mixed PAGA/class claims;

*Robles v. DCH*, Los Angeles County Superior Court Coordination Proceeding Case No. 4833 (**33.33% fee awarded** on $4,035,600 settlement of mixed PAGA/class claims;

*Padilla v. Staffmark Investment, LLC*, San Bernardino County Superior Court Case No. CIVDS1408641 (**33.33% fee awarded** on $2,000,000 settlement of PAGA only claims;

*Michael Merchant v. OfficeTeam*, Los Angeles County Superior Court Case No. BC 461652 (**33.33% fee awarded** on $1,500,000 settlement of mixed PAGA/class claims;

*Bengel v. Career Strategies Temporary, Inc.*, Los Angeles County Superior Court Case NO. BC 565227 (**33.33% fee awarded** on $750,000 settlement of mixed PAGA/class claims;

*Birch v. Office Depot*, United States District Court for the Southern District of California, Case No. 06cv1690 DMS (**40% fee awarded** on $16,000,000 settlement of mixed PAGA/class claims; and

*Amber Garcia v. Macy's West Stores, Inc.*, San Bernardino County Superior Court Case. No. CIVDS1516007 (**33.33% fee awarded** on a $12,500,000 settlement of a PAGA only case).

### 7.    *Litigation Costs*

Class Counsels' request for reimbursement of litigation costs not to exceed $110,000 (**Exhibit 1** ¶ 18) is also well within the range of reasonableness for a case that

has been heavily litigated for almost eight (8) years. To date, Class Counsel has incurred litigation costs in an amount close to $100,000, and will incur additional costs up through the time of the final approval hearing. The final amount of Class Counsels' litigation costs will be itemized in the Motion for Attorney's Fees, Costs, and Service Awards. (Hanson Decl. ¶ 49).

### 8.   *Service Awards*

Class representative service awards are typical in class action cases and are awarded based upon the following factors: **(1)** the risk of prosecuting the case (both financial and otherwise); **(2)** the negative notoriety associated with prosecuting a class action; **(3)** the time spent working on the case; **(4)** the length of the litigation (*See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) [discussing factors one through four]; and **(5)** the Court also looks at what percentage the service award amounts to out of the total settlement amount. *Turner v. Motel 6 Operating L.P.*, 2018 WL 6977474 at * 6 (C.D. Cal. 2018) [e.g., a $7,500 service award that amounted to only 0.5% of the total settlement amount was within the appropriate range for approval].

The Settlement provides for service awards to the two named Plaintiffs in the amount of $20,000 each. (**Exhibit 1** ¶ 19). Although Plaintiffs will provide additional information supporting their requested service awards in their Motion for Attorney's Fees, Costs, and Service Awards, as explained below, the service awards should be preliminarily approved at this time because they satisfy the five factors courts consider when evaluating service awards.

**Financial Risk** – The financial risk the named Plaintiffs faced here to pay Defendant's costs was real, significant, and *not a risk shared by the un-named Class Members*. Plaintiffs' litigation costs to date are close to $100,000. Therefore, United's costs would be in a similar range. At numerous points in this case, Plaintiffs Vidrio and Bradley were on the hook for United's costs: **(i)** on 03/15/2017, Vidrio/Bradley *were responsible for United's costs* when the Court granted summary judgment in favor of United on all claims; **(ii)** Vidrio/Bradley were potentially responsible for United's Ninth

Circuit appellate costs (*and still were responsible for United's trial costs*) if they had lost the appeal on *any* of the four (4) defenses raised by United on appeal and/or lost on the issue raised *sua sponte* by the Ninth Circuit at oral argument concerning a wage statement exemption for union employees; **(iii)** Vidrio/Bradley were potentially responsible for United's additional appellate costs (*and still were responsible for United's trial costs*) if they had lost the appeal on either of the two issues certified by the Ninth Circuit to the California Supreme Court, to wit, the California Wage Order exemption from the wage statement requirements of Labor Code section 226 for union employees, and the extraterritorial application of Section 226 to interstate workers; **(iv)** Vidrio/Bradley were potentially responsible again for United's additional appellate costs (*and still were responsible for United's trial costs*) if they had lost the appeal before the Ninth Circuit on *any* of the three (3) remaining issues before the Court after remand from the California Supreme Court, to wit, Dormant Commerce Clause preemption, Airline Deregulation Act preemption, and Railway Labor Act preemption; and **(v)** Vidrio/Bradley were potentially responsible again for United's trial costs if United had prevailed on the merits on the second round of cross-motions for summary judgment after remand from the Ninth Circuit. Indeed, United continued to make numerous arguments on the merits as to why it was in compliance with the requirements of Labor Code section 226, subdivision (a)(9), which were all rejected by the Court on May 6, 2022. Nevertheless, if United had been successful on even *one* of its arguments, then Plaintiffs' case would have failed and Plaintiffs would have been on the hook again for United's costs. (Hanson Decl. ¶ 36).

**Negative Notoriety** – A person's status as a class representative is not viewed as a positive thing by any employer/future employer, and is easily uncovered by the most basic employment background check. Moreover, as in this case, where the names of the Plaintiffs are forever enshrined in published Ninth Circuit and California Supreme Court decisions, Plaintiffs Vidrio and Bradley, and their role in this case, cannot be hidden from employers or anyone else. None of the un-named Class Members face this problem. It is unique to the named Plaintiffs in this action. (Hanson Decl. ¶ 37).

**The Time & Effort Devoted to this Case by Plaintiffs** – As will be shown in Plaintiffs' declarations in support of Plaintiffs' Motion for Attorney's Fees, Costs, and Service Awards, Plaintiffs Vidrio and Bradley have devoted a great deal of time to the prosecution of this case, including but not limited to, always assisting counsel upon request, providing numerous payroll documents and explaining same, contacting other flight attendants and gathering numerous declarations from them to support both class certification and Plaintiffs' motion for summary judgment, attending mediations, staying informed on the status of the case, and participating in case decisions, among other work. Plaintiffs have been an invaluable asset to Class Counsel in the prosecution of this case, and agreed to continue with the prosecution of this case over many years despite major setbacks that could only be fixed on appeal, and despite the ongoing risk to themselves of having to pay for United's costs in the event Plaintiffs lost this case on any one of the numerous defenses raised by United. (Hanson Decl. ¶ 38).

**The Duration of the Litigation** – The work on this case started in March of 2015, and the case is ongoing. As such, the litigation in this case has been going for almost eight (8) years, and has been a battle all the way up through the settlement negotiations. (Hanson Decl. ¶ 39).

**The Service Award Percentage Is Small (0.037%) In Relation to the Total Settlement Amount**–

The requested $20,000 service award is only 0.037% of the total $53,500,000 Settlement Amount, and when both service awards are combined, they are only 0.074% of the Total Settlement Amount. This is a reasonable percentage and in the range of other cases. *See Turner v. Motel 6 Operating L.P.*, 2018 WL 6977474 at * 6 (C.D. Cal. 2018) [a $7,500 service award that amounted to only 0.5% of the total settlement amount was within the appropriate range for approval]. (Hanson Decl. ¶ 40).

For the forgoing reasons, the requested service awards meet the standards for preliminary approval and should therefore be preliminarily approved by this Court.

### 9.    *Cy Pres*

If there is an amount remaining from uncashed settlement checks after the first check distribution, and a second check distribution to the Class Members is not economically feasible (e.g., the cost of the second distribution is more than the balance remaining), then the Settlement provides that the remaining balance shall be paid to Legal Aid at Work ("LAAW"). (**Exhibit 1** ¶ 24). The proposed *cy pres* recipient LAAW is an appropriate recipient of any unclaimed settlement money because of the important work LAAW does throughout the State of California to protect the rights of vulnerable low-wage earners. The work performed by LAAW has a direct nexus to this lawsuit in that LAAW handles wage and hour claims on behalf of California workers, . (Hanson Decl. ¶ 50).

### 10.    *Class Notice*

The Class Notice, attached as Exhibit "A" to the Settlement Agreement, summarizes this lawsuit and the terms and conditions of the Settlement. The Class Notice informs the Class Members of the total amount of the Settlement and the amounts allotted thereunder for attorney's fees, litigation costs, service awards, settlement administration costs, PAGA payments, and payments to the Class Members, and informs the Class Members about the release and their right to object or be excluded from the Settlement. The Notice also explains the procedure and deadlines for filing objections and appearing to present objections. The Class Notice provides the best notice possible under the circumstances and should be approved by this Court. (Hanson Decl. ¶ 18).

### 11.    *United's Remedial Measures*

Effective June 2022, as a direct result of the success Plaintiffs achieved in this lawsuit, United began changing the format of its wage statements to bring them into compliance with Labor Code section 226, subdivisions (a)(2) and (a)(9). (**Exhibit 1** ¶¶ 30-31). United has informed Plaintiffs that it believes the changes will be complete by

March of 2023. (Hanson Decl. ⁋ 16).

Plaintiffs and Class Counsel are extremely proud of the fact that this lawsuit caused United to make changes to the format of its wage statement as this was an important objective in this lawsuit. Indeed, in addition to seeking monetary penalties, Plaintiffs' Complaint also seeks injunctive relief requiring United to cure the defects in the format of its wage statements, to wit, list the number of hours worked in the pay period and the applicable rate paid for those hours. Although it is hard to put a monetary value on this success, it is a huge benefit for the Class Members and all future flight attendants of United. Once the paystub changes are complete, the flight attendants will be able to easily verify whether their pay is correct, and thus, also be able to immediately take any action necessary to correct any payroll errors. This is a great result and the very reason why Labor Code section 226 exists. (Hanson Decl. ⁋ 17).

## IV.   CONCLUSION

For all the reasons discussed above, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

Dated: December 19, 2022     Respectfully submitted,

JACKSON HANSON LLP


/s/ *Kirk D. Hanson*
Kirk D. Hanson
Attorneys for Plaintiffs, the Aggrieved
Employees, and the Class Members